IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RALPH GENE LILLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-319-GPM |
| | ) |
| DAIMLER CHRYSLER CORPORATION - | ) |
| UAW PENSION PLAN, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

This is Ralph Lilley's second case filed with this Court under 29 U.S.C. § 1132 (ERISA) because he was denied permanent disability benefits. In Lilley's first case, *Ralph Gene Lilley v. Daimler Chrysler Corporation, et al.* (*Lilley I*), Case No. 08-cv-0223-GPM, this Court found that the DaimlerChrysler-UAW Pension Board of Administration (Board) "did not make an arbitrary or capricious ruling when it determined that Lilley was not entitled to permanent disability benefits" (*Lilley I*, Doc. 65, p. 6). As such, this Court granted defendants' motion for summary judgment on the administrative record on February 19, 2009, and, in a separate judgment entered that same day, the action was dismissed on the merits (*Lilley I*, Doc. 66). While Lilley's first case — and his second Application for Permanent Total Disability (PTD) — still was pending before this Court, he filed an alleged "new" Application for PTD Retirement (Application) on July 7, 2008 (*Lilley II*, Doc. 2, Ex. Grp. B). This third Application is the subject of Lilley's current action.

In his Complaint, Lilley alleges one claim based on the Pension Plan[1] (Plan) administered jointly by the Union and the Corporation through the Pension Board of Administration; specifically, that the Board violated ERISA regulations by failing to "notify [Lilley] of any decision on his [third] application within 45 days after receipt of the claim" (Doc. 2, ¶ 16). Lilley further alleges that the Board's procedural violation operated as a legal denial of his claim for PTD benefits. As such, according to Lilley, the Board's denial "is entitled to no deference by [t]he Court and the Plaintiff is entitled to *de novo* review of the denial of his claim" (Doc. 2, ¶ 17). Lilley now seeks enforcement and clarification of his rights to future benefits and to recover all benefits due and owing under the Plan, plus attorney's fees and court costs. For the reasons outlined below, Lilley has failed to state any claim upon which relief may be granted.

## I. FACTS.

The relevant facts are not in dispute and were sufficiently recapitulated in this Court's earlier Order in *Lilley I* (Doc. 65). Lilley first applied for PTD retirement on September 9, 2002. Since that time, Lilley has filed a total of three Applications which have been denied by the Board four times and by this Court once. Arguably, the only "new" facts unique to Lilley's current claim are those surrounding his third Application for PTD filed on July 7, 2008, which included a social security award letter dated May 19, 2004, and various medical records – most of which predate the Board's denial of Lilley's appeal on his second Application in February 2004 (Doc 28, Ex. 4, pp. 2-3).

## II. ANALYSIS.

---

[1] Lilley argues that the 2003 version of the plan and not the 2007 version, which was in effect prior to Lilley's second Application, should control his claim. The Court, however, has found no changes in the language of the relevant portions of the 2003 and 2007 Plans (*see, e.g.,* Doc 28, Ex. 1, pp. 12-13 and 48-50; *compare*, Doc. 28, Ex. 2, pp. 23-27 and 91-97). Because the relevant portions of the Plans are identical, the applicable standards, definitions and analysis would be the same regardless of which version of the Plan is used to evaluate Lilley's claim. Thus, Lilley's argument is without consequence or merit.

It is a plaintiff's burden to plead sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009), *citing Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 556 (2007). Under *Iqbal*, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556. The Seventh Circuit Court of Appeals has provided further guidance:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Further, this Court may consider any documents that are attached to the Board's motion to dismiss which are "referred to in the plaintiff's complaint and are central to [his] claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

The Board urges this Court to dismiss Lilley's complaint because the claims are barred by *res judicata* and collateral estoppel. Ostensibly, Lilley's consecutive complaints are both based on the Board's denial of his Applications for PTD benefits and thus, warrant straightforward application of these two familiar concepts. Indeed, there was a final decision on the merits, there is an identity of the parties or their privies, and an apparent identity of the claims. *See Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). The devil, however, is in the details. While Lilley's repeated claims share many of the same operative facts, the factual allegations in Lilley's present complaint are distinct because they are based upon the Board's alleged

mishandling of his *third* Application for PTD benefits. As such, this is one of those "difficult intermediate cases — where there is substantial factual overlap between the two claims, but not … a complete or nearly complete lack of overlap," for which the Seventh Circuit has yet to suggest an analytical framework. *Hermann v. Cencom Cable Associates*, 999 F.2d 223, 227 (7th Cir. 1993). This Court therefore will not resolve the Board's motion to dismiss on these grounds because, at this early stage in the pleadings, it is at least plausible that Lilley's current complaint arises from distinct operative facts.[2] Nevertheless, Lilley's complaint fails to state a valid claim for relief because Lilley has not pled sufficient factual content that would allow this Court to draw the reasonable inference that the Board acted arbitrarily or capriciously.

The applicable standard for reviewing a decision by a pension board varies depending on the language of the plan, as thoroughly outlined in *Lilley I* (Doc. 65, pp. 3-4). If the Plan itself includes clear language granting the administrator discretionary authority to determine eligibility for benefits, the standard of review is restricted (*see Lilley I*, Doc. 65, p. 3 (citing *Patton v. MFS/SunLife Financial Distributors, Inc.*, 480 F.3d 478, 485-86 (7th Cir. 2007)). Such language must give the administrator the "authority to assess compliance with pre-existing criteria, … to interpret the rules, to implement the rules, and even to change them entirely." *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005). When such language is present, the Court must defer to the determinations of the pension board unless they are arbitrary or capricious. *See Militello v. Central States, SE & SW Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004). Finally, the "critical question is whether the plan gives the employee adequate notice that the plan administrator" has

---

[2] Even if it were so inclined, this Court could not dismiss the case under Rule 12(b)(6) based on res judicata because, procedurally speaking, it would be premature. "Since res judicata is an affirmative defense, the defendant should raise it and then move for judgment on the pleadings under Rule 12(c)." *See Carr v. Tillery*, --- F.3d ----, 2010 WL 92487 (7th Cir. Jan. 12, 2010).

been granted such discretion. *Diaz*, 424 F.3d at 639-40.

Here, the Plan grants discretionary authority to the Board to interpret the Plan, and to determine eligibility and the amount of benefits to which an employee is entitled (*see* Doc. 28, Ex. 1, p. 48 (2003 Plan); Doc. 28, Ex. 2, p. 92 (2007 Plan)). This language clearly grants the Board discretionary authority and provides adequate notice to employees such as Lilley. This Court must therefore use a deferential standard of review when analyzing the Board's actions. Only if the Board's decisions or actions were "arbitrary or capricious" will this Court conduct its own *de novo* review. A decision is arbitrary or capricious if: (1) there is no possible reasoned explanation, based on the evidence, for a particular outcome, (2) it involves an unreasonable explanation of relevant plan documents, or (3) it was based on a consideration of irrelevant factors, unimportant to resolving the issue at hand. *See Militello*, 360 F.3d at 686.

Nothing in the pleadings suggests that the Board's decision that Lilley does not qualify for permanent disability benefits was arbitrary or capricious. Indeed, the only Board action Lilley referenced in his complaint is their alleged failure "to notify the Plaintiff of any decision on his application within 45 days after its receipt of the claim" (Doc. 2, ¶ 16). Even assuming, *arguendo*, that the Board violated ERISA regulations by failing to respond to Lilley's Application within 45 days, this does not automatically mean the Board acted arbitrarily or capriciously. *Militello*, 360 F.3d at 689-690. While applicable regulations are specific in pronouncing the requirements, "strict compliance is not mandated. Rather, *substantial compliance* with the regulations is sufficient." *Id.* at 689 (quoting *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir. 1994)) (emphasis added).

For a number of reasons, Lilley's bare allegation of the Board's alleged procedural violation, by itself, is wholly insufficient to establish that the Board acted arbitrarily or capriciously. First, it

is unclear whether Lilley followed appropriate procedures when he initiated his third Application for PTD benefits (*see* Doc. 2, Ex. Grp. B, p. 2; Doc 28, Ex. 4, p. 3).  Second, when Lilley's attorneys contacted the Board by letter dated August 20, 2008 (Doc 2, Ex. E), clearly requesting notification as required by ERISA, the Board's attorneys responded promptly, approximately 23 days later, by letter dated September 12, 2008 (Doc. 2, Ex. D).  In this letter, the Board requested additional information from Lilley to help it clarify his intentions because of the confusing procedural posture created by Lilley's multiple claims and Applications.  Nevertheless, Lilley chose not to respond or provide any additional information until March 2, 2009, when Lilley's attorneys stated that their client intended "to pursue his new application for the disability pension," and then demanded that the Board take "appropriate action … and handle it in accordance with the requirements of ERISA" (Doc. 2, Ex. C).  The Board then responded by letter dated April 24, 2009, and denied Lilley's new Application on grounds nearly identical to his earlier denial (Doc 28, Ex. 4).  This detailed response, approximately 53 days after receiving the requested clarifying guidance from Lilley, substantially complies with ERISA procedural requirements as outlined in 29 C.F.R. § 2560.503-1(f)(3) (requiring the Board to notify applicants of an adverse benefit determination "within a reasonable period of time, but not later than 45 days after receipt of the claim by the plan").

Indeed, by maintaining long-term, ongoing communications with Lilley, the Board, in many ways, exceeded the standards for notification under ERISA regulations.  Lilley has therefore failed to allege sufficient facts to make it plausible that the Board acted arbitrarily or capriciously when it denied his third Application for PTD pension benefits.

However, even if, *arguendo*, the Board's eight-day delay was somehow found to be arbitrary and capricious and this Court undertook a *de novo* review, the end result still would be the same.

That is, Lilley's claims would fail because this Court already found that the Board "did not make an arbitrary or capricious ruling when it determined that Lilley was not entitled to permanent disability benefits" (*Lilley I*, Doc. 65, p. 6).  Therefore, even if the Board acted arbitrarily and capriciously because of p*rocedural* violations in denying Lilley's third Application, it did *not* act arbitrarily and capriciously when it previously determined the ultimate issue – that Lilley was not entitled to PTD benefits.  Filing a "new" Application, based on the same old information (other than a Social Security Award which is in no way dispositive of Lilley's claim for PTD), and then alleging minor procedural violations by the Board, cannot help Lilley avoid this ultimate conclusion.

### III.  Conclusion.

In light of the foregoing, the Court finds that the Pension Board did not make an arbitrary or capricious ruling when, for the third time, it determined that Lilley was not entitled to permanent disability benefits.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 18) and **DIRECTS** the Clerk of Court to enter judgment in its favor.

**IT IS SO ORDERED**.

DATED:  01/28/2010

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge